IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| THOMAS RHODES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-104 |
| | ) | |
| v. | ) | Judge Brian C. Wimes |
| | ) | |
| MICHAEL MCGEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOTION TO DEFENDANT
MCGEE'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

Plaintiff Thomas Rhodes spent nearly 25 years in prison for a crime he did not commit. He was wrongfully convicted of the 1996 murder of his wife, Jane Rhodes, who was not murdered at all. Jane's death was an accident. When Plaintiff and Jane were boating on Green Lake in Minnesota, Jane lost her balance, fell overboard and drowned. Unwilling to accept the fact that Jane's death was an accident, the individual Defendants fabricated evidence and conspired with one another to manufacture a crime that never occurred, and to frame Plaintiff for that crime.

Plaintiff was exonerated of Jane's murder in 2023, after Minnesota's Conviction Review Unit ("CRU") determined that Defendants Michael McGee and William Chandler provided inaccurate and scientifically unsupported testimony at trial. Plaintiff's convictions for first-degree and second-degree murder were vacated and he entered an *Alford* plea to second-degree manslaughter in exchange for a sentence of four years, time considered served.

Plaintiff alleges that Defendant McGee—the medical examiner who performed Jane's autopsy—violated Plaintiff's due process right to be free from false or fabricated evidence by intentionally creating misleading and scientifically inaccurate evidence regarding the causes of Jane's injuries, which was used to secure Plaintiff's murder conviction.

1

Plaintiff is not the only victim of McGee's misconduct. The CRU identified several other men who have had their convictions overturned based on McGee's fabrication of evidence and there are ongoing investigations into the legitimacy of McGee's findings in a host of other cases.

McGee's motion for judgment on the pleadings is rife with grave errors. As an initial matter, his memorandum in support of his motion completely fails to address Plaintiff's claims for Conspiracy (Count IV) and Intentional Infliction of Emotional Distress (Count VI). Therefore, those claims cannot be dismissed. Furthermore, McGee disregards the pleading standards, trying to dispute facts and urging the Court to refuse to credit well-pleaded allegations. Throughout his brief, McGee improperly relies on materials outside the complaint and inappropriately seeks to have this Court draw inferences in his favor based on those materials. McGee gets the law wrong in every conceivable way. He purposely misconstrues the nature of Plaintiff's claims in order to construct straw man arguments regarding qualified immunity, absolute testimonial immunity, and official immunity, and he misinterprets the favorable termination rule of *Heck v. Humphrey* and the law of collateral estoppel. Correctly analyzed, the Amended Complaint states claims against McGee for fabrication of evidence for which he is not entitled to any immunity.[1]

## RULE 12(c) STANDARD

"Because granting a Rule 12(c) motion 'summarily extinguish[es] litigation at the threshold and foreclose[s] the opportunity for discovery and factual presentation,' courts must treat such motions with the 'greatest of care.'" *Jackson v. Brooklyn Center Police Dep't*, 2023 U.S. Dist. LEXIS 36454, at *12 (D. Minn. Mar. 6, 2023). When reviewing a motion for

---

[1] Plaintiff voluntarily dismisses his Fourth Amendment malicious prosecution claim (Count II), state law malicious prosecution claim (Count V), and failure to intervene claim (Count III) against Defendant McGee.

judgment on the pleadings brought under Fed. R. Civ. P. 12(c), the Court applies the same standard used when addressing a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *National Union Fire Insurance Co. of Pittsburgh v. Cargill, Inc.*, 61 F.4th 615, 619 (8th Cir. 2023). "Courts must liberally construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff is entitled to relief, Fed. R. Civ. P. 8(a)(2), by alleging sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Pre-Filled Propane Tank Antitrust Litigation*, 860 F.3d 1059, 1603 (8th Cir. 2017). All reasonable inferences must be drawn in favor of the non-moving party. *See, e.g., Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014); *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) ("Civil rights pleadings are construed liberally" and in the light most favorable to the plaintiff).

## STATEMENT OF FACTS

### *Jane's Death*

During the summer of 1996, Plaintiff went on vacation with his wife Jane, their 9-year-old son Jason, their 14-year-old son Eric, and their family dog, to Green Lake in Kandiyohi County, Minnesota. Dkt. 64, Amend. Compl. ¶ 20.

The family took their Baja Blast boat with them on the vacation. *Id.* The Baja Blast was a small jet-powered boat, similar to a jet ski, with low railings along the sides. *Id.* The Rhodes family stayed at a hotel next to Green Lake for approximately a week. *Id.* at ¶ 21.

On August 2, 1996, the last night of their vacation, the boys played in the hotel pool late into the evening, as Plaintiff and Jane watched over them. *Id.* at ¶ 22. At approximately 11:30

p.m., after the boys had gone to bed, Plaintiff and Jane took their boat out on the lake, with

Plaintiff driving. *Id.* Neither Plaintiff nor Jane was wearing a life jacket. *Id.*

After seeing another boat driving recklessly, Plaintiff and Jane found a quieter area on the

lake where they could sit in the boat, talking and spending time together. *Id.* at ¶ 23. After some

time, they decided to take the boat for a final ride before heading back to the hotel. *Id.* Plaintiff

accelerated the boat, and as the boat was speeding, Jane leaned forward, possibly to pick up an

earring, lost her balance and fell over the side of the boat. *Id.* at ¶ 24.

Plaintiff hastily turned the boat around and began looking for Jane, who was not a strong

swimmer and was now overboard. *Id.* at ¶ 25. It was dark, there was no flashlight on the boat,

and Plaintiff had difficulty seeing anything in the water. *Id.* He frantically searched, driving the

boat in the area where he believed she fell in, before stopping the boat and jumping into the

water in an attempt to locate her. *Id.* at ¶ 26.

At approximately 1:00 a.m. on August 3, Plaintiff returned to the hotel, soaking wet,

crying, convulsing, and seeking help. *Id.* at ¶ 27. He pleaded for help, explaining to the hotel

clerk that his wife had fallen out of the boat, which prompted the clerk to dial 911 to report the

accident. *Id.*

Deputies from the Kandiyohi County Sheriff's Department arrived shortly thereafter. *Id.*

at ¶ 28. Plaintiff accompanied them on the lake to search for Jane, and, in spite of his emotional

state, he did everything he could to direct them to the area where she fell in. *Id.* Plaintiff assisted

the deputies in searching for Jane for approximately 30 minutes before one of the deputies

directed that he be returned to shore. *Id.* at ¶ 29.

After returning to the hotel, Plaintiff continued to cooperate with and assist the deputies, answering questions from detectives and agreeing to a breathalyzer test, which indicated there was no alcohol in his system. *Id.* at ¶ 30.

At approximately 1:30 p.m. on August 3, 1996, two fishermen found Jane's body floating in the water against the shore. *Id.* at ¶ 34.

### *McGee's Fabrication of Evidence*

On August 3, 1996, the Kandiyohi County Sheriff's Department informed Dr. Lyle Munneke, the Kandiyohi County Medical Examiner, of Jane's death. *Id.* at ¶ 35. Dr. Munneke had limited experience conducting reviews of drowning victims, having only handled two or three prior to examining Jane's body. *Id.* After discussing the matter with a Kandiyohi County Sheriff's Deputy and consulting with a local pathologist, Dr. Munneke and the Deputy decided that the body should be sent to Ramsey County for further examination. *Id.* at ¶ 36.

On August 6, 1996, Defendant Michael McGee, then Medical Examiner for Ramsey County, conducted an autopsy of Jane Rhodes at the Ramsey County Medical Examiner's Office. *Id.* at ¶ 37. The forensic evidence did not support a finding of homicide. *Id.* at ¶ 38. McGee listed the manner of death as "pending investigation," which continued to be McGee's finding for more than five months. *Id.* at ¶ 39.

Five months later, in January of 1997, Defendant McGee met with Defendant Boyd Beccue, the Kandiyohi County prosecutor. *Id.* at ¶ 40. Prior to this meeting, McGee had not yet determined the cause and manner of Jane's death. *Id.* at ¶ 39. This meeting occurred before a grand jury was empaneled and prior to a decision to seek an indictment. *Id.* at ¶ 41. At the time of the meeting, Defendant Beccue did not have probable cause to arrest or prosecute Plaintiff for Jane's death. *Id.*

5

During this meeting, McGee and Beccue agreed to frame Plaintiff for Jane's murder. *Id.* at ¶ 39-55. Beccue provided McGee with circumstantial facts that were completely unrelated to the medical or scientific evidence, including that Plaintiff and Jane previously had marriage problems and that on the night of the incident, officers reported that Plaintiff could not identify the precise location where Jane had fallen into the water. *Id.* at ¶ 46-47. These circumstantial facts have innocent explanations and in no way implicated Plaintiff in the death of his wife. *Id.* at ¶ 48. Beccue and McGee disregarded the innocuous nature of these facts and instead used them as a basis to implicate him in a murder he did not commit. *Id.* at ¶ 49. Armed with these circumstantial non-medical facts provided by Beccue, McGee disregarded the scientific evidence and changed his determination regarding the manner of Jane's death from "pending investigation" to "homicide." *Id.* at ¶ 50; Dkt. 70-1 (p. 23-24); Dkt. 70-7; Beccue Notes, Ex. 1. He drew conclusions from the autopsy that were knowingly misleading and scientifically inaccurate. *Id.* For example, during the autopsy, McGee observed injuries to Jane's face, which could have occurred from rubbing against the bottom of the lake, from a single strike by the hull of a boat, or from lividity. *Id.* at ¶ 52. McGee falsely claimed that multiple blows from Plaintiff's boat caused these injuries, despite the evidence suggesting otherwise. *Id.* McGee fabricated this conclusion to support the finding that Jane's death was premeditated murder, as opposed to the accident that it really was. *Id.* at ¶ 53. McGee also observed a hemorrhage in Jane's neck, which he falsely claimed was caused by being struck by an open hand in a "V" shape, although there was no corresponding bruising to the surface of the neck. *Id.* at ¶ 54. He fabricated this scientifically unsupported and unsupportable conclusion to suggest that Jane was pushed overboard, rather than having fallen out of the boat accidentally. *Id.* In fact, the medical and

scientific evidence suggested that the injury to Janes' neck likely occurred either during or due to the drowning process, or after her death. *Id.*

Beccue took notes during this meeting and subsequently wrote a memo summarizing the meeting, which he provided to one of the trial attorneys from the Attorney General's Office. *Id.* at ¶ 57; Dkt. 70-1 (p. 23); Dkt. 70-7; Ex. 1. The notes Beccue took during the meeting reflect that McGee changed the manner of death from pending to homicide. *See* Ex. 1 ("Manner of death? Change from pending to homicide."); Dkt. 70-7 ("It appears he will be changing the manner of death from pending to homicide."). These materials were never disclosed to Plaintiff or his defense counsel. *Id.* at ¶ 57, 72.

### *McGee and Chandler Conspire to Frame Plaintiff*

Defendant Chandler, a Hennepin County Sheriff's captain, participated in the conspiracy to frame Plaintiff by deliberately fabricating a police report in order to manufacture additional false inculpatory evidence against Plaintiff. *Id.* at ¶ 58-64, 77. In furtherance of the conspiracy, Defendants McGee and Chandler met together on at least two separate occasions prior to trial, in order, it can be reasonably inferred, to perfect their fabricated evidence to ensure that Plaintiff was wrongfully convicted. *Id.* at ¶ 58-64, 67, 77, 106-108; *see also* Dkt. 84 (Plaintiff's Response to Defendant Chandler's Motion to Dismiss)

### *McGee's Fabricated Evidence Used to Secure Plaintiff's Conviction*

Based on the false evidence manufactured by Defendants McGee, Chandler and Beccue, Plaintiff was indicted for first-degree and second-degree murder sixteen months after Jane's death. *Id.* at 65. Under an agreement with Kandiyohi County, the Minnesota Attorney General's Office led the investigation and prosecution of the case moving forward. *Id.* at ¶ 66.

The State's case at trial was based entirely on the false evidence manufactured by Defendants McGee, Beccue and Chandler, which caused Plaintiff to be convicted of first-degree and second-degree murder, and sentenced to life in prison. *Id.* at ¶ 65-70.

### *Plaintiff's Murder Convictions Vacated*

Plaintiff spent nearly 25 years in prison for a crime he did not commit. *Id.* at ¶ 71. Minnesota's Conviction Review Unit (CRU) reviewed his case and, after a thorough investigation, determined that Defendants McGee and Chandler provided insufficient and scientifically unsupported evidence. *Id.* During its investigation, the CRU had ten experts and forensic pathologists review McGee's conclusions. *Id.* at ¶ 82. All ten disagreed with McGee's classification of Jane's death as a homicide. *Id.* One of the experts found that there was no medical support for McGee's conclusion that Jane received multiple blows by a boat. *Id.* at ¶ 84. She also found that the medical evidence did not support McGee's conclusion that Jane suffered a blow to the neck and that there was no evidence to support McGee's conclusion that Jane was pushed from the boat. *Id.*

On January 13, 2023, Plaintiff's convictions for first-degree and second-degree murder were vacated. *Id.* at ¶ 73. In order to be released from prison, Plaintiff agreed to enter an *Alford* plea to second-degree manslaughter in exchange for a sentence of four years, time considered served. *Id.* at ¶ 74. The basis articulated for this lesser charge was evidence that Plaintiff drove the small and unstable boat in the dark, knowing his wife was not a strong swimmer and that she was not wearing a life jacket. *Id.* at ¶ 75. As such, Plaintiff spent over 20 years in prison beyond his lawful sentence, based on being convicted of a crime he did not commit. *Id.* at ¶ 76.

8

### *McGee's History of Falsifying Evidence*

McGee has a history of fabricating evidence which has caused the wrongful convictions of a number of individuals. *Id.* at ¶ 78. In 2021, in *United States v. Rodriguez*, a federal district court in North Dakota issued a written opinion criticizing McGee's testimony, finding that "there is no scientific evidence to support McGee's interpretation" and that his opinion was "so unmoored from a scientific basis that it should not have been received at all." The court held that McGee has "a well-documented history of providing false or inaccurate testimony in court" and that his testimony has been "proven to not be supportable by science." *Id.* at ¶ 79.

In 2011, in *Minnesota v. Hansen*, a Douglas County Judge found that McGee had provided false testimony. McGee falsely claimed that a child's death was a result of a skull fracture caused by blunt force trauma while in his father's care. However, multiple doctors reviewed the evidence and disagreed with McGee regarding the cause and manner of death. As a result of McGee's fabricated evidence, Michael Ray Hansen was falsely convicted of killing his infant child and wrongfully spent six years in prison. *Id.* at ¶ 80.

In *State of Wisconsin v. Zimmerman*, Evan Zimmerman was wrongfully convicted of killing his former girlfriend based on the fabricated autopsy and testimony of McGee. After the Milwaukee medical examiner testified and disputed most of McGee's conclusions, the Court of Appeals reversed Zimmerman's murder conviction in 2003. The prosecutor subsequently dropped the murder charges based on the lack of sufficient evidence without McGee's false testimony. *Id.* at ¶ 81. Additionally, the Ramsey County Attorney's Office is nearing the end of a

yearslong investigation of McGee's autopsies, which could result in additional overturned

convictions.[2]

## ARGUMENT

**I.      McGee is Not Entitled to Qualified Immunity on Plaintiff's Fourteenth Amendment Due Process Claim**

"Evaluating a claim of qualified immunity requires a two-step inquiry: (1) whether the

facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2)

whether that right was clearly established at the time of the defendant's alleged misconduct."

*Winslow v. Smith*, 696 F.3d 716, 730-31 (8th Cir. 2012) (citing *Saucier v. Katz*, 533 U.S. 194,

201 (2001)). "A court may exercise its discretion in deciding which of the two prongs of the

qualified immunity analysis to take up first." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236

(2009)). "Because qualified immunity is an affirmative defense, … it will be upheld on a

12(b)(6) motion only when the immunity is established on the face of the complaint." *Watkins v.

City of St. Louis*, 102 F.4th 947, 951 (8th Cir. 2024) (internal quotation omitted).

**A.      Plaintiff has stated a plausible claim for fabrication of evidence**

Under longstanding precedent, a defendant's due process rights are violated when he is

deprived of liberty because of the deliberate fabrication of evidence by a government official

acting in an investigative capacity. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959) (reiterating

that "a conviction obtained through use of false evidence, known to be such by representatives of

the State" violates due process); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) ("[P]resentation

of testimony known to be perjured . . . to procure the conviction and imprisonment of a

---

[2] *See* Stephen Swanson, *7 Autopsies Performed by Embattled Ex-Ramsey County Medical Examiner to Get Second Look*, CBS News, (Sep. 13, 2024) https://www.cbsnews.com/minnesota/news/ramsey-county-medical-examiner-michael-mcgee-john-choi-review/

defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation."); *Brown v. Miller*, 519 F.3d 231, 237 (5th Cir. 2008) (holding that a criminal defendant had a due process right to be free from "the deliberate or knowing creation of a misleading and scientifically inaccurate serology report"); *Pierce v. Gilchrist,* 359 F.3d 1279, 1285 (10th Cir. 2004) (Under the Fourteenth Amendment, there exists a "right not to be deprived of liberty without due process of law, or more specifically, as the result of the fabrication of evidence by a government officer acting in an investigative capacity."); *Devereaux v. Abbey,* 263 F.3d 1070, 1074-75 (9th Cir. 2001) (finding a due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated); *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004) ("[T]hose charged with upholding the law are prohibited from deliberately fabricating evidence. . . ."); *Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000) (finding that the defendant's due process rights were violated upon the fabrication of evidence that resulted in his arrest and eight months of confinement, from bail revocation to acquittal). Further, at the time of McGee's autopsy investigation, it was well-settled that defendants had a constitutional right to be free of fabricated evidence used in a criminal prosecution. *See, e.g., Livers v. Schenck*, 700 F.3d 340, 354-55 (8th Cir. 2012); *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 954 (8th Cir. 2001); *Winslow v. Smith*, 696 F.3d 716, 735 (8th Cir. 2012); *Irons v. Neske*, 2021 U.S. Dist. LEXIS 175391, at *8 (E.D. Mo. Sep. 15, 2021).

Here, Plaintiff alleges that McGee knowingly created misleading and scientifically inaccurate conclusions that were later introduced at Plaintiff's criminal trial, thereby denying him a fair trial and resulting in his wrongful conviction and incarceration. The fabricated evidence consists of the scientifically unsupported conclusions that McGee created as part of his meeting with Beccue that: multiple blows from Plaintiff's boat caused the injuries to Jane's face,

despite the evidence suggesting otherwise, which McGee fabricated to support the theory Jane's

death was premeditated murder, as opposed to the accident that it really was (Am. Compl.. at ¶

52-53); and the hemorrhage in Jane's neck was caused by being struck by an open hand in a "V"

shape even though there was no corresponding bruising to the surface of the neck, which McGee

fabricated to suggest that Jane was pushed overboard, rather than having fallen out of the boat

accidentally. *Id.* at ¶ 54.

Thus, Plaintiff's well-pleaded facts plausibly allege a due process fabrication of evidence

claim. *See, e.g., Pierce,* 359 F.3d at 1293-94 (allegations that forensic examiner "with knowing

and reckless disregard for the truth, informed the police and prosecutorial authorities that the hair

analysis supported Pierce's involvement in the rape – even though in fact, far from implicating

him in the rape, the hair analysis tended to exonerate him" were sufficient to state a claim);

*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009); *Dean v. Harris Cty.*, 2013 U.S. Dist.

LEXIS 132335, at *18-27 (S.D. Tex. Sept. 17, 2013); *Crawford v. Caddo Par. Coroner's Office*,

2019 U.S. Dist. LEXIS 54769, at *19-39 (W.D. La. Mar. 28, 2019); *Lacy v. Cty. of Maricopa*,

631 F. Supp. 2d 1197, 1205-12 (D. Ariz. 2008).[3]

McGee asserts that he is entitled to qualified immunity because Plaintiff has not plausibly

alleged that McGee committed a constitutional violation. Def. Br. at 25-26. Specifically, McGee

contends that Plaintiff's allegation that McGee changed his finding from "pending investigation"

to "homicide" is "factually incorrect based upon documents embraced by the pleadings" and

---

[3] McGee's reliance on *Lawyer v. Kernodle*, 721 F.2d 632 (8th Cir. 1983) and *Filarsky v. Delia*, 566 U.S.
377 (2012) is misplaced. Plaintiff agrees that McGee is allowed to *assert* the defense of qualified
immunity; Plaintiff's argument is that McGee is not *entitled* to qualified immunity. Furthermore, Lawyer
does not support McGee argument for qualified immunity. In *Lawyer*, the allegations were that the
defendant "negligently diagnosed the cause of death." *Lawyer*, 721 F.2d at 635. Here, the allegations are
that McGee intentionally created misleading and scientifically inaccurate conclusions that caused
Plaintiff's wrongful conviction and incarceration.

therefore cannot form the basis of his fabrication claim. *Id.* This argument fails because it mischaracterizes Plaintiff's allegations and contests the facts alleged.

The core of Plaintiff's due process claim is that McGee intentionally created misleading and scientifically fabricated evidence that he relayed to the prosecutor which caused Plaintiff to be wrongfully convicted. The fabrication occurred during McGee's January 1997 meeting with Beccue as described above. Plaintiff's allegations regarding this meeting alone constitute fabrication of evidence and are sufficient to defeat McGee's claims of immunity regardless of whether McGee ever formally documented his determination that the manner of death was homicide.[4] Plaintiff's claims do not rely on the text of McGee's autopsy reports, nor are they based on the Certificate of Death that was signed by Dr. Munneke, who is not a party to this suit.

### i.    McGee Improperly Relies on Selective Portions of Materials Outside the Pleadings

Moreover, McGee's attempts to dispute the facts by relying on materials outside the pleadings are improper. Considering matters outside the pleadings on a Rule 12(c) motion ordinarily converts it to a motion for summary judgment. Fed. R. Civ. P. 12(d). McGee claims that the Court can consider the 185 pages of documents he attached to his motion because they are embraced by the pleadings. However, considering matters outside the pleadings for those purposes is inappropriate here because at this stage the complaint must be construed in Plaintiff's favor. *See, e.g., Martin v. First Advantage Background Servs. Corp.*, 877 F. Supp. 2d 754, 761 (D. Minn. 2012) (denying a motion to dismiss that relied on materials outside of the pleadings because "it would not be appropriate for this Court to examine selected pieces of evidence submitted by Defendants without allowing Plaintiff the benefit of discovery."); *Porous*

---

[4] Discovery is necessary to determine whether additional reports exist that reflect McGee's documentation of his fabricated conclusions, as the CRU report states.

*Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) ("When considering a motion for judgment on the pleadings … the court generally must ignore materials outside the pleadings"); *Thermo Fischer Scientific Inc. v. Arthur*, 2023 U.S. Dist. LEXIS 214058, at *8 (E.D. Mo. Dec. 1, 2023) (denial of motion to dismiss given defendant's reliance on matters outside the pleadings throughout his motion to dismiss and memorandum in support).

For example, McGee relies on portions of his trial testimony to assert that the evidence Plaintiff claims was fabricated does not actually amount to fabrication because it was in the form of "possibilities" as opposed to "definitive cause[s]." Def. Br. at 29-30; Dkt. 70-3. This argument turns the pleading standard on its head. Considering materials outside the pleadings for this purpose is inappropriate. At this stage of the case, the facts and inferences must be construed in Plaintiff's favor.

McGee makes much of the fact that the word "homicide" does not appear in his final autopsy report, erroneously claiming that this "disproves" Plaintiff's allegation that he changed his finding. Def. Br. at 11, 26, 29, 32; Dkt. 70-4. However, this document is inexplicably silent on the manner of death, so it neither proves nor disproves anything regarding McGee's final determination. Moreover, the fact that McGee selectively attaches documents to his motion while omitting other documents that contradict his position highlights the fundamental unfairness of his attempt to rely on materials outside the pleadings. For example, McGee submitted an affidavit in 2014 as part of Plaintiff's post-conviction proceedings, where he averred, under penalty of perjury, that "my opinion that the matter of death was homicide was based on multiple sources of information and not just the autopsy findings." *See* McGee Affidavit, Ex. 2, ¶ 30.

Regardless, the materials cited by McGee actually support Plaintiff's allegations rather than "disproving" them, as McGee claims. For example, McGee's citation to Beccue's January

8, 1997 memo which memorialized his meeting with McGee only supports Plaintiff's allegations that during this meeting, McGee provided Beccue with fabricated evidence in the form of false findings and conclusions that were unsupported by the medical and scientific evidence. Def. Br. at 31; Dkt. 70-7. The memo also confirms that following the meeting, McGee would be "changing the manner of death from pending to homicide" and that Beccue would be convening a grand jury as a result of the meeting and the fabricated evidence provided by McGee.[5]

McGee also references the Certificate of Death for Jane Rhodes, which lists the manner of death as "pending investigation" and was signed by the Kandiyohi County Coroner on August 19, 1996, five months prior to McGee's meeting with Beccue. Def. Br. at 26, Dkt. 70-2. This document does not undermine Plaintiff's allegations in any way. In fact, it supports his claim that the initial finding was "pending investigation" and that the finding was changed as a result of McGee's meeting with Beccue.[6]

### B.    The right was clearly established in 1996

McGee does not address the second qualified immunity prong in his brief and therefore concedes, as he must, that the right to be free from the use of false evidence to secure a

---

[5] McGee contends that Plaintiff "overstates the importance" of the meeting between himself and Beccue, referring to it as "routine." Def. Br. at 13. This argument fails because it constitutes an effort to contest the facts by drawing highly questionable inferences in his favor, which is flatly improper at this stage of the case.

[6] McGee appears to argue that even if he did change his finding to "homicide," it would be irrelevant because Plaintiff pled guilty to second degree manslaughter. Def. Br. at 15, 26, 29, 32. This argument intentionally obfuscates the distinction between the medical examiner's responsibility to identify the manner of death from a medical standpoint and the question of legal culpability under the law. In the context of manner of death, "homicide" refers to an "intentional of volitional act."
*See* Hanzlick, Randy, MD, "Cause of Death and the Death Certificate: Important Information for Physicians, Coroners, Medical Examiners, and the Public" 2006, p. 15.
(https://www.health.state.mn.us/people/vitalrecords/physician-me/docs/capcodbook.pdf). In contrast, under Minnesota law, second-degree manslaughter requires only a negligence standard. *See* Minn. Stat. Ann. § 609.205(1). The medical and scientific evidence support a finding that Jane's death was not an intentional "homicide," but rather was an "accident" which is consistent with Plaintiff's *Alford* plea.

conviction was clearly established in 1996 as set forth in the cases cited above.[7] *See, e.g.,*

*Winslow*, 696 F.3d at 738 (8th Cir. 2012) ("Defendants do not dispute that the right to be free

from the use of false evidence to secure a conviction was clearly established in 1989, nor could

they.); *Wilson*, 260 F.3d at 949, 954-55, 956 n.8 (clearly established in 1986 that fabricating

evidence to secure conviction violates due process). As such, McGee's motion to dismiss

Plaintiff's fabrication claim on qualified immunity grounds should be denied.

This is also an "obvious case" of a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730,

741 (2002); *Taylor v. Riojas*, 592 U.S. 7 (2020). Any reasonable medical examiner would

understand that knowingly creating misleading and scientifically inaccurate conclusions and

using that evidence to frame someone prevents a fair trial and violates the constitution.

## II.    Absolute Testimonial Immunity Does Not Preclude Plaintiff's Fabrication Claim

McGee argues that he is entitled to absolute immunity based on his grand jury and trial

testimony. Def. Br. at 20-22. McGee is correct that witnesses sued under § 1983 are entitled to

absolute immunity "with respect to any claim based on the witness' testimony." *Rehberg v.*

*Paulk*, 566 U.S. 356, 367 (2012); *Briscoe v LaHue*, 460 U.S. 325, 332-333 (1983). However,

testimonial immunity does not extend to pre-trial acts of fabrication that are then presented by

way of testimony at trial. *See Rehberg*, 566 U.S. at 370 n.1 ("Of course, we do not suggest that

absolute immunity extends to *all* activity that a witness conducts outside of the grand jury room.

For example, we have accorded only qualified immunity to law enforcement officials who falsify

affidavits and fabricate evidence concerning an unsolved crime."). And while it is true that the

---

[7] Any such argument is now waived and cannot be raised for the first time in reply. *See Hodges v. State Dep't of Corr.*, 2020 U.S. Dist. LEXIS 137218, at *13 (D. Minn. May 28, 2020) *Refrigeration Supplies, Inc. v. Acadia Ins. Co.*, 2020 WL 905802, at *1 (E.D. Mo. Feb. 25, 2020) (noting an argument raised for the first time in a reply "would ordinarily prompt the Court to disregard it"); *Black v. Indep. Sch. Dist. No. 316*, 476 F. Supp. 2d 1115, 1121 n.6 (D. Minn. 2007) (declining to consider an argument raised for the first time in the defendant's summary judgment reply brief).

use of the false evidence at trial—partly through McGee's testimony—cemented the

constitutional injury, it does not follow that McGee's pretrial fabrication is immunized. As the

Sixth Circuit explained:

> Merely because a state actor compounds a constitutional wrong with another wrong
> which benefits from immunity is no reason to insulate the first constitutional wrong from
> actions for redress. The Court has consistently held that nontestimonial, pretrial acts do
> not benefit from absolute immunity, despite any connection these acts might have to later
> testimony.

*Gregory v. City of Louisville,* 444 F.3d 725, 737, 760 (6th Cir. 2006).

Plaintiff alleges that McGee fabricated evidence in connection to his meeting with

Beccue in January of 1997, which occurred during the investigation stage of the case, before a

grand jury was even empaneled. Am. Compl. at ¶ 39-41. These allegations remove McGee from

the realm of absolute testimonial immunity. *See Stinson v. Gauger*, 868 F.3d 516, 528-29 (7th

Cir. 2017) ("Stinson's claims against Johnson and Rawson focused on their actions while

Cychosz's murder was being investigated, not on their testimony at trial or preparations to testify

at trial. And if a prosecutor does not have absolute immunity for investigating the case, it follows

that an expert witness does not either. So Johnson and Rawson are not entitled to absolute

immunity."); *Avery v. City of Milwaukee*, 847 F.3d 433, 443 (7th Cir. 2017) (detectives could not

purify fabricated evidence by invoking *Briscoe's* absolute immunity rule).

## III.    McGee is Not Entitled to Official Immunity

The Minnesota Supreme Court has held that the question of "official immunity applies

turns on: (1) the conduct at issue; (2) whether the conduct is discretionary or ministerial and, if

ministerial, whether any ministerial duties were violated; and (3) if discretionary, whether the

conduct was willful or malicious." *Vassallo v. Majeski*, 842 N.W.2d 456, 462 (Minn. 2014).

Since Plaintiff has plausibly alleged that McGee acted willfully and maliciously in violating his rights, as set forth above, official immunity is unavailable.

## IV.    Plaintiff's Federal Due Process Claim is Not *Heck*-Barred

Plaintiff's claims against Defendant McGee are not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The Supreme Court in *Heck* held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 486-87. If "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the action must be dismissed. *Id.* at 487. Thus, if prevailing in a § 1983 action requires "negat[ing] an element of the offense of which he has been convicted," the action is barred by *Heck. Id.* at 486 n.6. But if a district court determines a § 1983 action, "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* at 487. McGee argues that Plaintiff's *Alford* plea to second-degree manslaughter precludes him from pursuing any claims based on *Heck*. This argument misinterprets *Heck* and must be rejected.

The Eighth Circuit has yet to address § 1983 claims like Plaintiff's: where a criminal defendant's original conviction is invalidated, a second, valid conviction is entered, and the criminal defendant sues for money damages based on a violation of his constitutional rights. The other Courts of Appeal and district courts that have considered this question, have concluded that *Heck* does not bar a plaintiff's due process claim. In *Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014), the Second Circuit held that the plaintiff's § 1983 action was not barred by *Heck*, despite his pleading guilty to a lesser offense. The plaintiff had been convicted of attempted

18

murder in the second degree and several related crimes. *Id.* at 124. After his conviction, he

learned that the victim had identified another individual in a photo array and failed to identify the

defendant in multiple arrays, which had never been disclosed to the defense. *Id.* at 125. After

bringing a challenge in state court, his conviction was vacated and he pled guilty to a lesser

charge of attempted robbery in the third degree, which led to his immediate release. *Id.* In

holding that the plaintiff's case was not barred by *Heck*, the Second Circuit found that "*Heck*

does not automatically bar a § 1983 claim simply because the processes of the criminal justice

system did not end up in the plaintiff's favor. A plaintiff need not prove that *any* conviction

stemming from an incident . . . has been invalidated, only a conviction that could not be

reconciled with the claims of his civil action." *Id.* at 132 (emphasis in original)

(quoting *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006)). The court further held that

when a court vacates a criminal conviction, it invalidates the final judgment and "from that

moment on, a § 1983 suit would not demonstrate the invalidity of the vacated conviction." *Id*. at

134.

In a similar case, *Clemons v. Brauer*, 2018 U.S. Dist. LEXIS 116048 (E.D. Mo. July 12,

2018), the court followed *Poventud* and reached the same conclusion regarding *Heck*. The

plaintiff had been convicted of two counts of first-degree murder and sentenced to death. *Id.* at 3.

The Missouri Supreme Court vacated his convictions and sentence due to the state's failure to

disclose favorable evidence and ordered the state to retry him. *Id.* at 3-4. The plaintiff filed a §

1983 lawsuit alleging violations of his constitutional rights. *Id.* at 4. As his § 1983 case was

pending, he pled guilty to second-degree murder, rape, and first-degree robbery in exchange for a

sentence of life in prison. *Id.* The court held that the plaintiff's § 1983 suit was not barred by his

guilty plea, as the state could still be liable for violating his due process rights even if he were

guilty of a lesser offense. *Id.* at 6. *See also Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420

(E.D. Pa. 2019) (where the defendant had initially served twenty-five years on death row before

ultimately pleading *nolo contendere* to a reduced charge, the district court found no *Heck* bar

because the civil action, alleging due process and fair trial denials, bore only on the initial

conviction and related to the process rather than ultimate guilt or innocence); *Dennis v. City of

Phila.*, 2023 U.S. Dist. LEXIS 195375 (E.D. Pa. Oct. 30, 2023); *Jackson v. Barnes*, 749 F.3d 755

(9th Cir. 2014) (where the defendant was convicted of murder then, after reversal, he was

convicted again at a trial at which the illegally obtained evidence was not used, the district court

held that the civil action was not *Heck*-barred); *Carson v. City of Phila.*, 2024 U.S. Dist. LEXIS

144421, at *12 (E.D. Pa. Aug. 13, 2024); *Maldonado v. City of Phila.*, 2023 U.S. Dist. LEXIS

125785 (E.D. Pa. July 21, 2023).

 Here, Plaintiff's 1998 convictions for first degree and second-degree murder were

vacated, along with his sentence to life imprisonment, so there is no *Heck* bar to challenging

those convictions or sentence. Plaintiff's Fourteenth Amendment due process claim for

fabrication of evidence does not necessarily invalidate his second conviction. His § 1983 claim

challenges the evidence underpinning his first conviction, but the first conviction satisfies the

favorable termination rule because it is already vacated. Plaintiff does not try to establish

innocence from his second conviction.

 The issue regarding Plaintiff's *Alford* plea involves the amount of damages Plaintiff can

seek. In *Poventud*, the plaintiff spent seven years in prison before his conviction was vacated and

then pleaded guilty to a lesser crime, and a state court imposed a one-year sentence. 750 F.3d at

124. In the plaintiff's § 1983 action, the Second Circuit held that he could seek damages for

wrongful incarceration for the years he spent in prison, *except for the one year that was*

*supported by the valid criminal judgment*: "Poventud cannot seek to collect damages for the time that he served pursuant to his plea agreement (that is, for the yearlong term of imprisonment)." *Id.* at 136. *Cf. Taylor v. Cty. of Pima*, 913 F.3d 930, 932-36 (9th Cir. 2019) (finding that the plaintiff could not recover damages for the time he served wrongfully convicted where the plaintiff accepted a plea agreement and was sentenced to time served on the original conviction).

Here, Plaintiff spent nearly 25 years in prison as a result of his 1998 convictions for first-degree and second-degree murder, which were vacated. Am. Compl. ¶ 71, 73. He was sentenced to four years, time considered served for his 2023 conviction for second-degree manslaughter. *Id.* at ¶ 74. Applying the principle from *Poventud*, Plaintiff can pursue damages for the difference—the more than 20 years he spent incarcerated for the murder convictions.

## V.    Plaintiff's Claims are Not Precluded by Collateral Estoppel

McGee incorrectly asserts that Plaintiff is collaterally estopped from pursuing his claims in this lawsuit because he "attacked Dr. McGee's trial testimony many times over more than twenty years" and his conviction was repeatedly affirmed. Def. Br. at 30-31. Under Minnesota law, collateral estoppel is appropriate when the following four elements are met: (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Ill. Farmers Ins. Co. v. Reed*, 662 N.W.2d 529, 531 (Minn. 2003).

Collateral estoppel is inapplicable here for at least two reasons. *First*, Plaintiff's wrongful conviction has been vacated. And the Minnesota Supreme Court has clearly held that "a vacated judgment has no res judicata or collateral estoppel effect." *Staples v. Zinn*, 302 Minn. 149, 152, 223 N.W.2d 415, 417 (1974). Numerous Circuit Courts of Appeal have adopted this position.

*See Jackson v. Coalter*, 337 F.3d 74, 85 (1st Cir. 2003) ("it is hornbook law that '[a] vacated judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case.'"); *Stone v. Williams*, 970 F.2d 1043, 1054-55 (2d Cir. 1992) (citing Moore's Federal Practice for the proposition that "[a] judgment vacated or set aside has no preclusive effect"); *Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir. 1985) (holding that factual findings underlying plaintiff's criminal conviction for marijuana possession had no preclusive effect in his subsequent civil case, even though his conviction was vacated exclusively because the statute was unconstitutional); *Korczak v. Sedeman*, 427 F.3d 419, 422 (7th Cir. 2005) ("A vacated judgment is not a permissible basis for collateral estoppel"); *Mills v. City of Covina*, 921 F.3d 1161, 1170 (9th Cir. 2019) (holding that "the jury's underlying factual determinations . . . were vacated with Mills's conviction" and thus had no preclusive effect in his subsequent civil case even though his conviction was overturned exclusively on constitutional grounds); *United States v. Lacey*, 982 F.2d 410, 412 (10th Cir. 1992) ("A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel. The same is true, of course, of a judgment vacated by a trial court."); *United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada, AFL-CIO*, 721 F.3d 678, 691, 406 U.S. App. D.C. 46 (D.C. Cir. 2013) ("A judgment vacated either by the trial court or on appeal has no estoppel effect in a subsequent proceeding.")

*Second*, no court has ever ruled on the "identical issue" that is before this Court. As explained above, Plaintiff's claim is based on his allegations that McGee and Beccue fabricated evidence during their January 1997 meeting. That issue was never previously adjudicated. McGee acknowledges that this is a "new allegation that Plaintiff has unearthed that has not been

previously considered by Minnesota courts or the Eighth Circuit," yet he claims that collateral estoppel applies anyway because "there is nothing wrong or abnormal about a meeting between a prosecutor and a witness." Def. Br. at 31. This argument obviously fails because it contests the facts by drawing highly questionable inferences in McGee's favor which is improper at this stage of the case.

Evidence of the meeting between McGee and Beccue was concealed from the Plaintiff's defense lawyers, in violation of *Brady v. Maryland*, for 25 years. Plaintiff was denied the opportunity to use this information at trial. The jury was not able to consider this evidence. Plaintiff was unable to present this evidence at any point in post-conviction proceedings. None of the courts which upheld the jury verdict ever had the opportunity to consider this evidence. Collateral estoppel cannot apply to Plaintiff's claims under these circumstances.

Moreover, even in the unlikely event that this court were to find that these rigorous threshold requirements are met, the doctrine should not be applied because it is by no means "clear that no unfairness will result to the party that would be estopped from relitigating the issue." *Goodwin v. Board of Tr. of Univ. of Ill.*, 442 F.3d 611, 621 (7thCir. 2006).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant McGee's motion for judgment on the pleadings regarding Plaintiff's claims for Fourteenth Amendment Due Process violation, civil conspiracy, and Intentional Infliction of Emotional Distress.

Dated: October 4, 2024                    Respectfully submitted,

                                          /s/ Brad J. Thomson
                                          Brad J. Thomson

Ben H. Elson, G. Flint Taylor,
Tayleece Paul
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070

Tim Phillips
Law Office of Tim Phillips
3331 Second Avenue South, Suite 400
TriTech Center
Minneapolis, MN 55401
(612) 470-7179